[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 525.]

THE STATE EX REL. B.F. GOODRICH COMPANY, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. B.F. Goodrich Co. v. Indus. Comm.*, 1995-Ohio-291.]

*Workers' compensation—Application for permanent disability compensation—Industrial Commission's order awarding compensation reversed and returned to the commission for further consideration and amended order, when.*

(No. 94-576—Submitted June 6, 1995—Decided August 30, 1995.)

APPEAL from the Court of Appeals for Franklin County, No. 92AP-1402.

————————————

{¶ 1} Claimant, Wanetta D. Hamilton, sustained three industrial back injuries while in the course of and arising from her employment with appellant, B.F. Goodrich Company ("Goodrich"). In 1991, she moved appellee, Industrial Commission of Ohio, for permanent total disability compensation. Attending physician Dr. Gary W. Miller stated:

"The patient has documented disk disease at two levels of the spine and spinal fusion to try to stabilize these areas and still has occasional intermittent type pain. I do not feel that this patient is going to be able to participate in any gainful employment, prolonged sitting will be restricted, prolonged standing, lifting, twisting and bending should be strictly restricted."

{¶ 2} Commission physician Dr. Paul F. Gatens, Jr. opined:

"* * *claimant's allowed industrial injuries do prevent her from returning to her former position of employment. * * * I do not, however, feel that she has a permanent and total impairment. In my opinion, the claimant could perform work in the sedentary strength physical capacities provided she could alternate the sitting and standing positions at will. * * * Based on my examination and review of the

file, it would be my opinion that the claimant has a permanent and partial impairment related to the allowed industrial injuries of 60% * * *. All of this impairment is related to claims for the low back. * * * In my opinion the only program that would be of any possible benefit to the claimant would be vocational evaluation for jobs in the sedentary strength of physical capacities."

{¶ 3} Dr. F.A. Humphrey wrote:

"She [claimant] did quit work at that time [July 1988] because of pain in the lower extremities as well as low back pain and discomfort. She also has a history of chronic Thrombophlebitis of both lower extremities. She has had problems with chronic swelling of both legs. She has been on Coumadin therapy for the last 16 years. She also has a history of having surgery on her lower extremities 3 times for varicose veins, last surgery on her legs was approximately 12 years ago. She has also had separate surgery for removal of clots in the past as well. She does have continued problems with pain and periodic bouts of swelling of her legs. She does wear TED hose, above knees, both lower extremities. She states at this time she can stand no more than 30 minutes at a time because of pain and swelling of her legs as well as low back pain and discomfort.

"* * * She cannot stand or sit for any longer than thirty minutes at a time because of not only her leg pain and swelling, but as well as low back pain and discomfort. * * *

"* * *

"This is a 46 year old * * * female who is unable to be gainfully employed because of problems with low back pain and discomfort. * * * She states she can [*sic*] stand or sit for longer than 30 minutes at a time. This is related to back as well as leg pain and discomfort. She does not demonstrate any evidence of claudication. She does have a history of chronic Thrombophlebitis. * * * She has not worked since July 1988[.] [A]t that time she did work in maintenance type of work for three years. She feels she is unable to continue in that former capacity because of

pain in her back as well as lower extremity pain and discomfort. * * * Per history can only climb or balance herself on an occasional basis, but she is unable to stoop, crouch, crawl or kneel. She also has problems with reaching, pushing or pulling. Again this is related to her back pain as well. * * * Also she states she can walk no more than a hundred feet without developing considerable back pain, often this necessitates sitting and resting[,] particularly if done in a brisk manner."

{¶ 4} The commission awarded claimant permanent total disability compensation, stating:

"The reports of Doctor(s) Gatens, Humphrey, Miller, Hughes and Meyer were reviewed and evaluated. This order is based particularly upon the reports of Doctor(s) Humphrey, Miller and Gatens, evidence in the file and/or evidence adduced at the hearing.

"Claimant is 47 years old, has an 11th grade education, worked as a plant maintenance worker, babysitter, housecleaner and waitress. Claimant has no special training or skills. Claimant has only had manual type employment. Dr. Gatens finds claimant has the physical functional capacity to perform sedentary work. Dr. Miller finds restrictions exist against prolonged sitting, standing, twisting, lifting and bending. Dr. Humphrey reports claimant is unable to walk more than 100 feet without developing back pain. Based upon the above indicated reports and lack of transferrable skills, the claimant is found to be permanently and totally disabled."

{¶ 5} Goodrich filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission's order was unsupported by "some evidence" and did not adequately explain the commission's reasoning. The court of appeals disagreed, writing:

"* * * the commission noted the relator's age, her educational level and her work experience which was devoid of any special skills or training. When these factors are coupled with the final or third report of her attending physician

indicating permanent total disability, there appears a mosaic that serves as some evidence upon which the commission based its decision. * * * While we did not view the commission's decision as one of a model format for the consideration and explanation of a decision allowing permanent total disability, we must conclude that the decision meets minimal requirements of [*State ex rel. Mitchell v. Robbins & Meyers, Inc.* (1983), 6 Ohio St.3d 481, 6 OBR 531, 453 N.E.2d 721; *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 507 N.E.2d 245]. Additionally, while we may not unanimously agree with the conclusion reached by the commission, that is not the basis for the issuance of a writ of mandamus."

{¶ 6} This cause is now before this court upon an appeal as of right.

———————————

*Vorys, Sater, Seymour & Pease, Elizabeth T. Smith* and *Randall W. Mikes*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Philip Y. Gauer,* Assistant Attorney General, for appellee.

———————————

**Per Curiam.**

{¶ 7} Two questions are presented: (1) Did the commission improperly rely on Dr. Humphrey's report? and (2) Did the commission's order satisfy *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245? For the reasons to follow, we reverse and return the cause to the commission for further consideration and amended order.

{¶ 8} Dr. Humphrey's report has two flaws. First, it intertwines references to claimant's allowed conditions with claimant's nonallowed venous condition. He mixes these references to such an extent that it is impossible to distill therefrom the amount of impairment attributable solely to the allowed back condition. Moreover, he does not specifically address claimant's ability to engage in all sustained remunerative employment. He instead limits his opinion to claimant's former

position of employment, a return to which is prohibited by both back and leg pain. Unfortunately, Dr. Humphrey never indicates whether claimant's leg pain is a symptom of her back condition or whether it stems from her lower extremity thrombophlebitis.

{¶ 9} The wording of Dr. Humprey's report negates the commission's conclusion that nonallowed conditions did not factor whatsoever into Dr. Humphrey's disability assessment. Because the extent of reliance is unclear, the commission's reliance on that report is suspect.

{¶ 10} Dr. Humphrey's report, however, was not the only evidence on which the commission relied. The commission also relied on the reports of Drs. Gatens and Miller. While Dr. Gatens found a capacity for sedentary employment, Dr. Miller specifically found claimant incapable of all work. The commission does not appear to have adopted the latter conclusion, since the tenor of the order, combined with the commission's decision to engage in nonmedical analysis, implies that the commission found claimant medically capable of some work.

{¶ 11} The commission's nonmedical assessment is the focus of Goodrich's assault. Goodrich argues that *State ex rel. Waddle v. Indus. Comm.* (1993), 67 Ohio St.3d 452, 619 N.E.2d 1018, dictates vacation of the comission's order. In that case, we returned to the commission an order denying permanent total disability that stated:

"The Industrial Commission finds that claimant is 53 years old, has an eighth grade education, and has worked as a cement finisher and working foreman. * * * [W]hen Dr. Hutchison examined the claimant and review[ed] the medical record, he concluded the claimant was capable of sustained remunerative employment. Considering the non-medical disability factors noted above and the moderate level of impairment found by Dr. Hutchison, the Industrial Commission finds that the claimant is not precluded from performing sustained remunerative employment." *Id.* at 453, 619 N.E.2d at 1019.

**{¶ 12}** We held:

"* * * It is not enough, in this case, for the commission to merely recite that 'claimant is 53 years old, has an eighth grade education, and has worked as a cement finisher and working foreman.' These factors are susceptible to both positive or negative interpretations depending on the reviewer, and, therefore, mere recitation gives no insight into the commission's reasoning. If, for example, the commission views these factors as assets to retraining, it should say so. Specific recitation, without more, is only slightly better than the old boilerplate language assailed in *Noll*. We, therefore, return the order to the commission for further consideration and amended order." *Id*. at 458, 619 N.E.2d at 1022.

**{¶ 13}** Goodrich initially suggests that simple comparison of facts dictates disposition consistent with *Waddle*. We disagree with this premise, refusing to look solely, as Goodrich would have us do, at the claimant's age and education. We note that while Hamilton's age and education are more favorable than Waddle's, her medical impairment, for example, appears greater. Thus, in this instance, factual comparison will not compel the result Goodrich seeks.

**{¶ 14}** Goodrich's second argument is more complicated. Goodrich notes that the deficiency in *Waddle* was the commission's failure to identify claimant's nonmedical factors as assets or obstacles to *retraining*. Goodrich accuses the commission of improperly ignoring the retraining issue in this case by focusing exclusively on claimant's *current* abilities without addressing the capacities that might be developed through retraining. As stated in *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 170, 31 OBR 369, 372, 509 N.E.2d 946, 950:

"The commission should consider any other factors that might be important to its determination of whether this specific claimant may return to the job market by utilizing her past employment skills, *or those skills which may be reasonably developed*." (Emphasis added.)

{¶ **15**} Goodrich raises a compelling point under these facts for three reasons. First, claimant was only age forty-seven when permanent total disability was denied. Her age, therefore, does not offset the potential advantages of retraining. In many cases, retraining is a vain act, given the almost insurmountable vocational obstacle that advanced age poses to even the healthiest job seeker. That is not necessarily so in this instance.

{¶ **16**} In a similar vein, claimant's educational level does not inherently suggest a lack of capacity for retraining. Claimant has an eleventh grade education. Concededly, from a prospective employer's standpoint, the lack of a high school diploma is what counts—it is immaterial whether claimant was one year away from a degree or six. Nevertheless, an eleventh grade education does not as readily suggest the absence of intellectual capacity that, for instance, a sixth-grade education does. Thus, while the absence of a high school diploma may be an impediment to re-employment, it may not pose the same obstacles to retraining.

{¶ **17**} Finally, evidence of record indicates that claimant did not participate in rehabilitation services offered by the commission. There is no indication that claimant's lack of participation was based on a physician's medical advice, or on a vocational evaluation that concluded that she was intellectually, psychologically or emotionally incapable of retraining. Absent such evidence, the implication is that claimant simply chose not to avail herself of the opportunity to receive retraining and potential re-employment.

{¶ **18**} The commission does not, nor should it, have the authority to force a claimant to participate in rehabilitation services. However, we are disturbed by the prospect that claimant may have simply decided to forgo retraining opportunities that could enhance re-employment opportunities. An award of permanent total disability compensation should be reserved for the most severely disabled workers and should be allowed only when there is no possibility for re-employment.

**{¶ 19}** In this case, the commission said only that claimant's present skills would not transfer to other employment. It did not say anything about potential skills that could be developed. A claimant's lack of participation in retraining does not necessarily translate into an *inability* to be retrained. We find, therefore, that under these facts the commission's explanation is insufficient.

**{¶ 20}** Accordingly, the judgment of the court of appeals is reversed, and the cause returned to the commission for further consideration and amended order.

*Judgment reversed.*

DOUGLAS, WRIGHT, PFEIFER and COOK, JJ., concur

MOYER, C.J., RESNICK and F.E. SWEENEY, JJ., dissent.

_____