DECISION
 IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION {¶ 1} In this original action, relator, Daisy Arthur, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her request for permanent total disability ("PTD") compensation and enter an order granting said compensation.
 {¶ 2} Relator's compensation claim arises from two separate industrial injuries. Claim No. 74-44302 was allowed for "muscle sprain to neck and right shoulder; occipital neuralgia; chronic pain syndrome; [and] adhesive capsulitis of the right shoulder." Claim No. 01-842280 was allowed for "bilateral carpal tunnel syndrome; [and] aggravation of pre-existing bilateral basilar arthritis." Relator suffered the first claim on September 5, 1974 while employed by Clopay Corporation.[1]
She suffered the second claim in 2001 while employed by White Castle Systems, Inc.
 {¶ 3} On September 4, 2005, relator filed an application for PTD compensation. At the commission's request, relator was examined by Andrew Freeman, M.D., on May 20, 2005. Dr. Freeman noted that relator underwent a series of surgeries on her hands following her diagnosis for claim No. 01-842280. Dr. Freeman described relator's surgeries as follows:
 * * * In May 2002, she underwent a left carpal tunnel release and in June 2002 she underwent a right carpal tunnel decompression with a right flexor tenosynovectomy. She had continued pain at the base of both thumbs and after the claim was allowed for basilar arthritis (arthritis at the base of the thumb), she underwent an arthrodesis with placement of hardware in the left CMC joint in October 2002. She underwent a similar operation in February 2003 in the right thumb. On January 9, 2004, she had an excisional interpositional arthroplasty for a metacarpal-carpal trapezial joint on the right hand with the palmaris longus tendon graft. She also had removal of the metal plate and screws from the previous operation.
 {¶ 4} Dr. Freeman concluded that relator's allowed physical conditions had reached a maximum medical improvement ("MMI") of 28 percent whole person impairment. Dr. Freeman completed a "Physical Strength Rating" form in which he noted that relator was capable of sedentary employment "with additional restriction of no repetitive hand motions[.]"
 {¶ 5} Dr. Freeman also included relator's occupational history in his report:
 OCCUPATIONAL HISTORY: She has not worked since March 26, 2002. She states that she last worked for White Castle from 1998 through 2002 as a fast food restaurant worker. From 1964 to 1968, she was a machine operator operating a security bag-making machine. From 1969 to 1970, she was a machine operator slicing lunchmeats. From 1971 to 1975 until her shoulder and neck injury, she was a machine operator operating a rolling machine, taping and assembling plastic window shades. She did not work from 1975 to 1998.
 {¶ 6} At the request of respondent, White Castle Systems, relator underwent an employability assessment by vocational expert, Deanna Arbuckle. Ms. Arbuckle's July 11, 2005 report revealed that relator's previous job duties ranged from unskilled to skilled and required light or medium strength. Ms. Arbuckle noted that relator left school after completing the 11th grade in 1958. Relator never obtained a GED. Relator did indicate that she was able to read, write, and do basic math. Under her "Residual Employability Profile (Transferable Skills)," Ms. Arbuckle stated that:
 Ms. Arthur has demonstrated the ability to work in a position requiring average aptitudes of intelligence, spatial perception, form perception, clerical perception, motor coordination, finger dexterity, and manual dexterity. She has also demonstrated 7-8th grade Reasoning, and 4-6th grade Math and Language proficiencies. She has demonstrated temperaments for occupations that require performing repetitive or short cycle work; attaining precise set limits, tolerances, and standards; making judgements and decisions; and dealing with people. Specific skills have been developed in the Work Fields of Filling-packaging-wrapping (Unskilled); shearing-shaving (Unskilled), structural fabrication-install-repair (Semi-Skilled), cooking-food preparing (Skilled), accommodating (Unskilled) and merchandising sales (Unskilled). Through her prior work activity, the claimant has gained experience with the following materials, products, subject matter or services (MPSMS): processed meat products; [dairy] products; wood and metal fixtures; converted paper and paperboard products [etc]; retail trade; production services; and meal services except domestic[.]
 {¶ 7} Upon review of relator's occupational history and Dr. Freeman's report, Ms. Arbuckle concluded that relator is capable of sedentary sustained remunerative employment. Based upon her analysis, Ms. Arbuckle suggested sedentary occupations conducive to relator's skill level:

976.682-014 PRINTER OPERATOR, BLACK-AND-WHITE Sedentary 5-skilled Operates printer to produce black-and-white photographic prints from negatives. 249.587-018 DOCUMENT PREPARER, MICROFILMING Sedentary 2-unskilled Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices.
 {¶ 8} A staff hearing officer ("SHO") conducted a hearing on relator's PTD application on July 28, 2005. The SHO relied upon the reports submitted by Dr. Freeman and Ms. Arbuckle in denying relator's claim for PTD compensation. The SHO further analyzed relator's non-medical factors. The SHO noted that relator was 62 years old. Although her age was not a positive factor for re-employment, relator's education, ability to read, write and do basic math, and the skills she gained from her previous positions were positive factors for consideration. The SHO further stated that "the Injured Worker's lack of engaging in rehabilitation reflects negatively on the injured Worker's application for permanent and total disability compensation."
 {¶ 9} Based upon these findings, the SHO found that relator was not entitled to PTD compensation. On September 22, 2005, relator filed the within writ of mandamus alleging: (1) the commission abused its discretion by failing to properly consider and discuss its decision based upon relator's non-medical factors; and (2) the commission abused its discretion by relying upon Ms. Arbuckle's vocational report.
 {¶ 10} Pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. The magistrate rendered a decision on June 30, 2006, including findings of fact and conclusions of law. (Attached as Appendix A.) Based upon his application of the case law to these facts, the magistrate found: "(1) the Arbuckle report provides some evidence upon which the commission can rely to support the commission's non-medical analysis, and (2) the commission did abuse its discretion in holding relator accountable for not having engaged in any type of retraining since her most recent injury in 2001." Accordingly, the magistrate recommended that this court issue a writ of mandamus granting relator's request for PTD compensation.
 {¶ 11} Relator objected to the magistrate's decision on the grounds that Ms. Arbuckle's vocational report is flawed and internally equivocal and, thus, may not be considered evidence upon which a decision may be based. State ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 649. Respondents object to the magistrate's determination that the commission abused its discretion by holding relator accountable for failing to undergo any retraining or rehabilitation. We overrule relator's objection and sustain respondents' objection.
 {¶ 12} For a writ of mandamus to issue, relator must exhibit a legal right to relief from the determination of the commission and that the commission has a legal duty to provide such relief. State ex rel.Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. The right to relief is demonstrated by showing that the commission abused its discretion by entering an order not supported by the evidence of record. State ex rel.Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. However, where some evidence of record supports the commission's order, there is no abuse of discretion and mandamus is not available. State ex rel. Lewis v. DiamondFoundry Co. (1987), 29 Ohio St.3d 56.
 {¶ 13} Relator contends that Ms. Arbuckle's vocational report mischaracterizes relator's physical restrictions set forth in Dr. Freeman's medical report. Relator argues that Ms. Arbuckle failed to take into consideration the proviso in Dr. Freeman's report that relator was capable of sedentary work as long as she was not required to perform repetitive hand motions. Relator further asserts that all of the jobs listed in Ms. Arbuckle's report require repetitive hand motions in direct contradiction with Dr. Freeman's orders. As such, relator feels Arbuckle's report is fundamentally flawed and may not be relied upon as some evidence to support the commission's non-medical analysis underEberhardt. Relator concludes that the only vocational evidence the commission may rely upon is the report submitted on her behalf by William Cody, which states she is permanently and totally disabled.
 {¶ 14} Relator misinterprets the holding in Eberhardt. Eberhardt
stands for the proposition that equivocal medical opinions may not be relied upon as some evidence by the commission. However, the Supreme Court of Ohio made no mention of vocational reports, indicating the court's intent that the rule only apply to medical opinions. Because Ms. Arbuckle's report is vocational evidence, Eberhardt does not apply in this case.
 {¶ 15} Furthermore, we have long held that the commission is the ultimate expert on vocational and non-medical evidence. State ex rel.Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266. While the commission may, in its discretion, refer to offered vocational evidence, it is not required to do so:
 * * * [T]he commission, as the exclusive evaluator of disability, is not bound to accept vocational evidence, even if uncontradicted. Rather, upon a determination of claimant's permanent partial impairment, the commission's charge is to review the evidence of the claimant's age, education, work history, and other relevant nonmedical characteristics and to decide for itself from that evidence whether the claimant is realistically foreclosed from sustained remunerative employment. The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary, because the commission is the expert on this issue. * * *
Id. at 270-271. (Emphasis sic.) The commission did not abuse its discretion in relying upon Ms. Arbuckle's report as some evidence to determine that relator is not entitled to compensation. Relator's objection is overruled.
 {¶ 16} Respondents object to the magistrate's determination that the commission abused its discretion by holding relator accountable for not seeking rehabilitation or retraining following her most recent injuries. The magistrate noted that the commission failed to consider relator's five surgeries in 2002, 2003 and 2004, and their impact on her ability to undergo retraining. We agree that the magistrate erroneously placed the burden on the commission to consider how rehabilitation and retraining would be affected by relator's multiple surgeries.
 {¶ 17} Ohio Adm. Code 4123-3-09(C)(3) states, in part, that "the burden of proof is upon the claimant * * * to establish each essential element of the claim by preponderance of the evidence." (Emphasis added.) Absent proof, the commission may deny compensation if "[t]he employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain." R.C. 4123.58(D)(4). In State ex rel. B.F. Goodrich Co. v. Indus.Comm. (1995), 73 Ohio St.3d 525, the injured worker did not take advantage of rehabilitation and retraining programs. The Supreme Court of Ohio noted:
 The commission does not, nor should it, have the authority to force a claimant to participate in rehabilitation services. However, we are disturbed by the prospect that claimant may have simply decided to forgo retraining opportunities that could enhance re-employment opportunities. An award of permanent total disability compensation should be reserved for the most severely disabled workers and should be allowed only when there is no possibility for re-employment.
Id. at 529.
 {¶ 18} Relator bore the burden of showing why she did not participate in rehabilitation or retraining. Relator did not submit any evidence that she sought out or attempted retraining. Moreover, relator did not suggest that retraining would be futile in light of her physical condition. Absent evidence proving otherwise, we can only reach the conclusion that relator failed to establish her burden of proof that rehabilitation or retraining would be in vain. The magistrate improperly shifted the burden of proof from relator to the commission to reach the recommendation that a writ of mandamus be granted and relator awarded PTD compensation.[2]
 {¶ 19} Pursuant to Civ. R. 53(E)(4), we have conducted a full review of the magistrate's decision, relator and respondents' objections, and submitted memoranda. For the foregoing reasons, we overrule relator's objections and sustain respondents' objections. We decline to adopt that portion of the magistrate's decision that relieved relator from her burden to demonstrate that she either engaged in educational or rehabilitative efforts or that such efforts would be in vain. Relator's request for a writ of mandamus is denied.
Relator's objections are overruled; respondents' objections aresustained; writ of mandamus denied.
KLATT, P.J., and DESHLER, J., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
 (APPENDIX A) MAGISTRATE'S DECISION IN MANDAMUS {¶ 20} In this original action, relator, Daisy Arthur, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 21} 1. Relator has two industrial claims. Claim No. 01-842280 arose from her employment as a fast food restaurant worker with respondent, White Castle Systems, Inc. The claim is allowed for "bilateral carpal tunnel syndrome; aggravation of pre-existing bilateral basilar arthritis." The commission recognizes July 16, 2001, as the date of diagnosis in claim No. 01-842280.
 {¶ 22} 2. Claim No. 74-44302 arose from relator's employment as a roller machine operator with respondent, Clopay Corporation. The claim is allowed for "muscle sprain to neck and right shoulder; occipital neuralgia; chronic pain syndrome; adhesive capsulitis of the right shoulder." The injury in claim No. 74-44302 occurred September 5, 1974.
 {¶ 23} 3. On September 4, 2005, relator filed an application for PTD compensation. In her application, relator states that she last worked on March 26, 2002.
 {¶ 24} 4. On May 20, 2005, at the commission's request, relator was examined by Andrew Freeman, M.D. In his narrative report, Dr. Freeman describes relator's surgical history arising from the July 16, 2001 diagnosis:
 On July 16, 2001, she was working for White Castle System Incorporated as a fast food worker when due to repetitive motion in both hands, she developed bilateral carpal tunnel syndrome with numbness and pain in both hands and wrists. She had an EMG with nerve conduction velocities on July 16, 2001, which showed right-sided severe carpal tunnel syndrome similar to the 2000 EMG. In May 2002, she underwent a left carpal tunnel release and in June 2002 she underwent a right carpal tunnel decompression with a right flexor tenosynovectomy. She had continued pain at the base of both thumbs and after the claim was allowed for basilar arthritis (arthritis at the base of the thumb), she underwent an arthrodesis with placement of hardware in the left CMC joint in October 2002. She underwent a similar operation in February 2003 in the right thumb. On January 9, 2004, she had an excisional interpositional arthroplasty for a metacarpal-carpal trapezial joint on the right hand with the palmaris longus tendon graft. She also had removal of the metal plate and screws from the previous operation.
 {¶ 25} 5. In his narrative report, Dr. Freeman also describes relator's occupational
history:
 OCCUPATIONAL HISTORY: She has not worked since March 26, 2002. She states that she last worked for White Castle from 1998 through 2002 as a fast food restaurant worker. From 1964 to 1968, she was a machine operator operating a security bag-making machine. From 1969 to 1970, she was a machine operator slicing lunchmeats. From 1971 to 1975 until her shoulder and neck injury, she was a machine operator operating a rolling machine, taping and assembling plastic window shades. She did not work from 1975 to 1998.
 {¶ 26} 6. In his narrative report, Dr. Freeman concludes with a discussion and opinion:
 DISCUSSION: Daisy Arthur has allowed conditions from 2 different claims being evaluated in this report. The neck, right shoulder, occipital nerve, bilateral hand and thumb conditions are all still symptomatic. OPINION: Based solely on the allowed conditions listed in the claims reviewed, and considering only the physical conditions allowed: 1. These allowed conditions have reached MMI. 2. Based on the American Medical Association's Guides to the Evaluation of Permanent Impairment 5th Edition, the whole person impairment for the allowed physical conditions in the claim in 28%. * * *
 {¶ 27} 7. On May 20, 2005, Dr. Freeman completed a Physical Strength Rating form. The form asks the examining physician to indicate the classification of physical work activity the injured worker may be capable of performing. On the form, Dr. Freeman marked "sedentary work" but added "with additional restriction of no repetitive hand motions[.]"
 {¶ 28} 8. Respondent, White Castle Systems, Inc., requested an employability assessment from Deanna Arbuckle, a vocational expert. In her report dated July 11, 2005, Arbuckle twice describes the opinion of Dr. Freeman.
 {¶ 29} On page two of her report, Arbuckle states:
 Andres [sic] Freeman, MD, DS (05/20/2005) has opined the claimant capable of sedentary work.
 {¶ 30} On page five of her report, Arbuckle states:
 Medical evaluation and examination report from Andres [sic] Freeman, MD, MS who opined Ms. Arthur has reached maximum medical improvement with the ability to perform sedentary work.
 {¶ 31} 9. In her July 11, 2005 report, Arbuckle states:
WORK HISTORY
 The following represents the claimant's work history based on the information provided and utilizing the Dictionary of Occupational Titles guidelines:
 DOT Code Occupational Title Skill Level Strength
313.374-010 Cook, fast food 5-Skilled Medium
311.472-010 Fast food worker 2-Unskilled Light
692.685-250 Window shade cutter mounted 3-Semi-skilled Light
920.587-018 Packager, Meat 2-Unskilled Medium
316.684-014 Deli Cutter Slicer 2-Unskilled Light
649.685-014 Bag Machine Operator 3-Semi-skilled Medium
 RESIDUAL EMPLOYABILITY PROFILE (TRANSFERABLE SKILLS) Transferable skills are developed through past jobs that can be utilized in other work. Specific skills, aptitudes and academic abilities can be determined by virtue of what a person demonstrated in the previous work history, and this analysis provides the basis for an assessment of vocational functioning capacities through identification of acquired job skills, aptitudes, temperaments and academic abilities.
 Ms. Arthur has demonstrated the ability to work in a position requiring average aptitudes of intelligence, spatial perception, from perception, clerical perception, motor coordination, finger dexterity, and manual dexterity. She has also demonstrated 7-8th grade Reasoning, and 4-6th grade Math and Language proficiencies. She has demonstrated temperaments for occupations that require performing repetitive or short cycle work; attaining precise set limits, tolerances, and standards; making judgements and decisions; and dealing with people. Specific skills have been developed in the Work Fields of Filling-packaging-wrapping (Unskilled); shearing-shaving (Unskilled), structural fabrication-install-repair (Semi-Skilled), cooking-food preparing (Skilled), accommodating (Unskilled) and merchandising sales (Unskilled). Through her prior work activity, the claimant has gained experience with the following materials, products, subject matter or services (MPSMS): processed meat products; [dairy] products; wood and metal fixtures; converted paper and paperboard products [etc]; retail trade; production services; and meal services except domestic[.]
 OCCUPATIONS RELATED TO THE CLAIMANT'S WORK HISTORY: Based on the report from Dr. Freeman, Ms. Arthur is capable of sustained remunerative employment in the sedentary capacity level. With this in mind, a transferable skills analysis was completed based on "any work within basic capacities[."] This level is based only on consideration of basic client capacities (the occupational search profile). There is no consideration of skills acquired through past work experience (WORK and MPSMS). There is no assurance that the client has the actual skills needed to perform the occupations at a competitive level. Occupations with an SVP of 1 or 2 require no previous specific occupational experience and can likely be learned within 30 days through on-the-job performance. Occupations requiring supervisory and/or management responsibility have been excluded from this analysis as they were not demonstrated in the work history.
 DOT CODE TITLE AND DESCRIPTION REQUIRED STRENGTH SKILL
976.682-014 PRINTER OPERATOR, BLACK-AND-WHITE Sedentary 5-skilled
Operates printer to produce black-and-white photographic prints from negatives.
249.587-018 DOCUMENT PREPARER, MICROFILMING Sedentary 2-unskilled
Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices.
 {¶ 32} 10. Following a July 28, 2005 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
 The Injured Worker was examined at the request of the Industrial Commission by Dr. Freeman on 05/20/2005. Dr. Freeman indicated that the Injured [Worker] is right hand dominant and that she indicated to him during the course of the interview that she was not able to sit for more [than] 10 minutes before her hands began to hurt. He indicated however that the Injured Worker was observed being able to sit for more than 30 minutes during the interview portion of the examination without any difficulty. Dr. Freeman examined the Injured Worker and found that there was no tenderness to palpation over the cervical spine but there was diffused mild spasm of the paracervical musculature. The right shoulder demonstrated no visible swelling or deformity and that there was no tenderness over the AC joint or else where in the shoulder region. Examination of the bilateral wrist demonstrated no visible swelling or deformity of the wrist and that Tinel's, Finkelstein's and Phalen's tests were negative. Examination of the thumbs bilaterally showed no deformities or joint instability and that there was full strength demonstrated with flexion and extension against resistance at the IM and MP joints. He found that eth CMC joints were hypertrophic and tender bilaterally. Dr. Freeman found that the allowed orthopedic conditions have reached maximum medical improvement and result in a 28% whole person impairment rating. He concluded that the Injured Worker would be able to engage in sedentary work activity with additional restrictions of no repetitive hand motions. The Staff Hearing Officer finds that the Injured Worker's orthopedic conditions have reached maximum medical improvement and are permanent and preclude the Injured Worker from returning to her former position of employment. The Hearing Officer finds that the injured Worker would be able to engage in sedentary work activity which does not involve repetitive hand motions based upon the 05/20/2005 report from Dr. Freeman. The employer submitted a 07/11/2005 vocational report from Ms. Arbuckle who opined that the Injured Worker's age of 62 classifies the Injured Worker as a person closely approaching advanced age and opined that her age would not be seen as work prohibitive. The vocational expert found that the Injured Worker had an 11th grade education but did not obtain a GED. She found that the Injured Worker's 11th
grade education would be consistent with ability to perform unskilled and semi-skill work activity. She also noted that the Injured Worker could read, write and do basic math. The vocational expert found that the Injured Worker's past work history consisted of unskilled semi-skilled and skilled work activity as a cooker/cleaner in a fast food restaurant, window shade machine operator, meat slicer and machine operator and machine bag operator. She found that the Injured Worker demonstrated the ability to work in positions requiring average aptitudes of intelligence, spatial perception, form perception, clerical perception, motor coordination, finger dexterity and manual dexterity. She noted that the Injured Worker demonstrated the ability to read at the 7-8th grade level, and engage in math and language skills at the 4-6th grade level. She also indicated that the Injured Worker demonstrates temperaments for occupations that require repetitive or short cycle work, attaining precise set limits, tolerances, and standards and making judgements and decisions and dealing with people. She found that the Injured Worker developed specific skills in the fields of packaging-wrapping, shearing-shaving, structural fabrication-installation repair and cooking-food preparation. The Staff Hearing Officer finds that the Injured Worker is 62 years of age, has an 11th grade education and has previous work experience as a fast food restaurant worker, machine operator. The Hearing Officer finds that the Injured Worker's age of 62 classifies the Injured Worker as a person closely approaching advance[d] age and that her age affects the Injured Worker's ability to adapt to new work situations and to compete with other employees. The Hearing Officer finds that the Injured Worker's age is not a positive factor with regard to the Injured Worker returning to sedentary employment. The Hearing Officer finds that the Injured Worker has an 11th grade education and has the ability to read, write and do basic math without difficulty. The Hearing Officer finds that the [I]njured Worker's 11th grade education would be sufficient in order for the Injured Worker to engage in entry level sedentary employment activity. The Hearing Officer finds that the Injured Worker's ability to read, write and do basic math without difficulty as noted on her application would be a positive factor with regard to the Injured Worker engaging in entry level sedentary employment activity or engaging in any type of retraining which may be necessary to re-enter the work force. The Hearing Officer finds that the Injured Worker's past work history has involved unskilled, semi-skilled and skilled work activity. She has demonstrated the ability to engage in positions which required average aptitudes of intelligence and also requires spatial perception, form perception, clerical perception, motor coordination and manual dexterity. These positions also demonstrates the Injured Worker's ability to reason at the 7-8th grade level and engage in math and language skills at the 4-6th grade level. The Hearing Officer finds that the Injured Worker's past work history has involved the injured Worker engaging in employment which demonstrates temperaments for occupations that require the ability to attain precise set limits, tolerances and standards, making judgements and decisions and dealing with people. She has developed specific skills from her previous employment including packaging-wrapping, structural fabrication for installing and repairing, cooking and food preparing and merchandising sales. The Hearing [Officer] finds that the Injured Worker's past work history would not be a barrier to the Injured Worker returning to the work force in an unskilled sedentary position or engaging in retraining necessary for such employment activity. The Staff Hearing Officer finds from a review of the file that the Injured Worker has not engaged in any type of retraining even though she has been out of the work force for approximately 4 years since her most recent injury in 2001. A review of the file indicates that the Injured Worker did attempt to engage in a rehabilitation program in 1981 but her rehabilitation plan was closed as she missed several days without calling either the team or the doctor and it was determined that the Injured Worker did not want to participate in rehabilitation at that time. The Hearing Officer finds that the Injured Worker's lack of engaging in rehabilitation reflects negatively on the injured Worker's application for permanent and total disability compensation. The Hearing Officer finds that an award of permanent total disability compensation should be reserved for the most severely disabled workers and should be allowed only when there is no possibility for re-employment. State ex rel. B. F. Goodrich Co. v. Industrial Comm. (1995) 73 Ohio St. 3d 525. The Hearing Officer finds that such a conclusion can not be drawn based on the Injured Worker's forgoing retraining opportunities that could enhance reemployment opportunities. Based upon the Injured Worker's lack of vocational retraining, as well as her education and work experience, the Staff Hearing Officer finds that eth Injured Worker would be able to engage in sustained remunerative work activity and is not permanently and totally disabled. Therefore the Hearing Officer denies the Injured Worker's Application for Permanent Total Disability Compensation filed 03/04/2005.
 {¶ 33} 11. On September 22, 2005, relator, Daisy Arthur, filed this mandamus action.
Conclusions of Law:
 {¶ 34} Two main issues are presented: (1) whether the Arbuckle report provides some evidence upon which the commission can rely to support its non-medical analysis, and (2) whether the commission abused its discretion in holding relator accountable for not having engaged in any type of retraining since her most recent injury in 2001.
 {¶ 35} The magistrate finds: (1) the Arbuckle report provides some evidence upon which the commission can rely to support the commission's non-medical analysis, and (2) the commission did abuse its discretion in holding relator accountable for not having engaged in any type of retraining since her most recent injury in 2001.
 {¶ 36} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 37} Turning to the first issue, it is settled law that the commission is the expert on the non-medical factors. State ex rel.Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 271. The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary. Id.
 {¶ 38} Here, the SHO's order reveals that the commission conducted its own analysis of the non-medical factors with some reliance upon portions of the Arbuckle report. It was proper for the commission to do so.
 {¶ 39} Equivocal medical opinions are not evidence. State ex rel.Eberhardt v. Flxible (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id.
 {¶ 40} Citing Eberhardt, relator argues that the Arbuckle report is equivocal and, thus, cannot provide some evidence to the commission to support its non-medical analysis. Relator argues that the Arbuckle report is equivocal because allegedly Arbuckle mischaracterizes Dr. Freeman's opinion regarding physical work capability. According to relator, Arbuckle's failure to indicate Dr. Freeman's restriction of "no repetitive hand motions" flaws Arbuckle's entire report, thus requiring that the entire report be eliminated from evidentiary consideration.
 {¶ 41} To further her argument, relator contends that Arbuckle's alleged failure to recognize Dr. Freeman's restriction of "no repetitive hand motions" led Arbuckle to erroneously conclude that relator is capable of performing employment as a printer operator (black and white) and a "document preparer, microfilming[,]" which relator asserts are "jobs that would be hand intensive in nature." (Relator's brief at 8.) The magistrate disagrees with relator's argument in several respects.
 {¶ 42} To begin, relator's argument that Arbuckle mischaracterized Dr. Freeman's opinion as to physical capacity does not demonstrate an equivocation even if the alleged mischaracterization is accepted.
 {¶ 43} Secondly, even if it is accepted that Arbuckle mischaracterized Dr. Freeman's opinion, such would not necessarily flaw Arbuckle's entire report.
 {¶ 44} The SHO's order does not indicate commission reliance upon Arbuckle's entire report. The SHO did rely on Arbuckle's presentation and analysis of relator's work history. However, the SHO did not adopt Arbuckle's employment options. The analysis of relator's work history would necessarily be unaffected by any alleged mischaracterization of Dr. Freeman's medical opinion.
 {¶ 45} Moreover, there is no requirement that a vocational expert exhaustively list all the medical restrictions when referring to a medical report. The vocational expert is permitted some degree of latitude in describing or summarizing the medical opinion. Here, relator's challenge to Arbuckle's description of Dr. Freeman's opinion invites some degree of speculation as to Arbuckle's understanding of the report. Because it is the commission that weighs the evidence, it is inappropriate for this court to accept relator's view of Arbuckle's report. See State ex rel. Baker v. Formica Corp., Franklin App. No. 05AP-137, 2005-Ohio-6373.
 {¶ 46} Turning to the second issue, in the case cited in the SHO's order, State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995),73 Ohio St.3d 525, 529, the court states:
 * * * [E]vidence of record indicates that claimant did not participate in rehabilitation services offered by the commission. There is no indication that claimant's lack of participation was based on a physician's medical advice, or on a vocational evaluation that concluded that she was intellectually, psychologically or emotionally incapable of retraining. Absent such evidence, the implication is that claimant simply chose not to avail herself of the opportunity to receive retraining and potential re-employment. The commission does not, nor should it, have the authority to force a claimant to participate in rehabilitation services. However, we are disturbed by the prospect that claimant may have simply decided to forgo retraining opportunities that could enhance re-employment opportunities. An award of permanent total disability compensation should be reserved for the most severely disabled workers and should be allowed only when there is no possibility for re-employment.
 {¶ 47} Pertinent here, the SHO's order again states:
 The Staff Hearing Officer finds from a review of the file that the Injured Worker has not engaged in any type of retraining even though she has been out of the work force for approximately 4 years since her most recent injury in 2001.
 {¶ 48} If we accept relator's statement in her PTD application or Dr. Freeman's statement in his report, relator last worked on March 25, 2002, which is approximately three years and four months prior to the PTD hearing date. Dr. Freeman indicates in his report, which the commission accepted, that relator underwent surgeries in May, June, and October 2002, February 2003, and January 2004. The SHO failed to address how these surgeries would permit relator to engage in retraining. Moreover, Dr. Freeman does not opine that relator was a candidate for retraining for the period at issue. It appears that the SHO's analysis of relator's rehabilitation efforts fails to address a key issue. Accordingly, this magistrate concludes that the SHO abused his discretion in determining that lack of rehabilitation efforts negatively affects on the PTD application.
 {¶ 49} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate its SHO's order of July 28, 2005, and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the PTD application.
/s/Kenneth W. Macke
KENNETH W. MACKE
[1] Relator attempted rehabilitation in 1981, following her first industrial claim from 1974. However, the plan was closed after relator failed to show up for several days without notifying her doctor or rehabilitation team.
[2] Although not dispositive to the outcome of this proceeding, we note that on a prior occasion, rehabilitative services were made available to relator. However, she failed to attend sessions without providing any notice to her doctor or rehabilitation team. Her previous behavior indicates that relator would neither seek out rehabilitation or retraining, nor would it be likely that she would avail herself of those services if they were again made available to her.