DECISION
{¶ 1} Relator, The Ohio State University ("OSU"), filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order, which granted permanent total *Page 2 
disability ("PTD") compensation to respondent Gloria Morris ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) No party objected to the magistrate's findings of fact, and we adopt them as our own. OSU filed two objections to the magistrate's conclusions of law.
 {¶ 3} In its first objection, OSU asserts that the magistrate erred in holding that there was no abuse of discretion where the staff hearing officer ("SHO") did not consider claimant's failure to participate in vocational rehabilitation. We disagree.
 {¶ 4} R.C. 4123.58(D)(4) precludes PTD compensation where an employee's inability to work is due to the employee's failure to engage "in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain." However, claimant's employability was not at issue here. The SHO found, based on the medical evidence, that claimant was physically incapable of sustained remunerative activity. Once the SHO made that finding, the SHO was not then required to consider non-medical factors, which would have included claimant's education and vocational aptitude. State ex rel.Consol. Biscuit Co. v. Indus. Comm., Franklin App. No. 06AP-47,2007-Ohio-2214, ¶ 6, 48; State ex rel. Speelman v. Indus. Comm. (1992),73 Ohio App.3d 757, 762, citing State ex rel. Galion Mfg. Div., DresserIndustries, Inc. v. Haygood (1991), 60 Ohio St.3d 38. *Page 3 
 {¶ 5} In support of its objection, OSU cites State ex rel. B.F.Goodrich Co. v. Indus. Comm., 73 Ohio St.3d 525, 1995-Ohio-291, andState ex rel. Arthur v. Indus. Comm., Franklin App. No. 05AP-1018,2006-Ohio-6776. However, these cases are distinguishable because, in each case, the claimant had been found to be physically capable of employment. Therefore, non-medical factors were at issue, and the commission had to consider claimants' educational and rehabilitative efforts. These opinions are not persuasive authority here because the SHO concluded that claimant was incapable of sustained remunerative employment based on medical factors alone. Accordingly, we overrule OSU's objection.
 {¶ 6} In its second objection, OSU asserts that the magistrate erred in concluding that the SHO did not err by relying on the reports of Nancy Renneker, M.D., Charles J. Kistler, D.O., and Michael G. Drown, Ph.D. However, we agree with the magistrate's analysis and resolution of this issue. Specifically, we agree that the reports of Drs. Renneker and Kistler indicate that they based their conclusions only upon allowed conditions and that the reports constitute some evidence to support the commission's decision. We also agree that the commission had the discretion to determine the weight and credibility to be afforded Dr. Drown's report. And, even if Dr. Drown's report were eliminated as evidence, some evidence supporting the commission's order would still remain. Therefore, we overrule OSU's second objection.
 {¶ 7} Having overruled OSU's objections to the magistrate's decision, and finding no error of law or other defect on the face of that decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law *Page 4 
contained in it. In accordance with the magistrate's decision, the requested writ is denied.
Objections overruled, writ of mandamus denied.
 BRYANT and TYACK, JJ., concur. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION Rendered on February 25, 2008 IN MANDAMUS {¶ 8} Relator, The Ohio State University ("OSU"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total *Page 6 
disability ("PTD") compensation to respondent Gloria Morris ("claimant") and ordering the commission to find that claimant is not entitled to that compensation. Findings of Fact:
 {¶ 9} 1. Relator sustained a work-related injury on August 5, 1996, and her claim has been allowed for "right knee contusion, right knee sprain/strain; tear lateral meniscus knee-cur; aggravation of right knee degenerative changes with degenerative tear of lateral meniscus; depressive disorder; left hip sprain, left knee sprain; low back sprain; right hip strain/sprain."
 {¶ 10} 2. On April 14, 2006, claimant filed an application for PTD compensation. At the time of her application, claimant was 54 years of age. On her application, claimant indicated that she had completed the 11th grade, had not obtained a GED, and had not received any trade or vocational school training. Claimant indicated that she could read, write and perform basic math, but not well. Claimant also indicated that she used a brace and cane intermittently. Lastly, claimant indicated that she had not participated in rehabilitation services and checked the box indicating that she was not interested in pursuing rehabilitation services. Claimant's work history consisted of work as a cook, cab driver, housekeeper, custodian for OSU from 1978 to 1985, and a bus driver for OSU from 1985 to 1996. Claimant submitted medical reports from Drs. Charles Kistler, Nancy Renneker, and Michael Drown.
 {¶ 11} 3. In his January 19, 2006 report, Dr. Kistler specifically identified the allowed conditions in claimant's claim, provided his findings upon physical examination, and opined that claimant is "permanently and totally impaired from sustained remunerative employment solely as a result of the injuries suffered in this claim." *Page 7 
 {¶ 12} 4. Dr. Renneker conducted an independent medical evaluation and issued a report dated November 18, 2005. Dr. Renneker listed the allowed conditions in claimant's claim, noted her present complaints, provided her physical findings upon examination, and concluded:
 Based on medical records reviewed and my exam of this date, Gloria J. Morris has the following permanent job restrictions related to her work injury of 8-5-96: (1) able to sit for a maximum interval of 2 hours; however, Gloria Morris will need to sit in a chair with arms rests as Ms. Morris will need to use her arms pushing against arm rest of chair in order to go from seated posture to standing posture, able to walk with a straight cane on a level surface a distance of no more than 20 yards, unable to floor to waist bend, unable to squat, unable to kneel, unable to climb ladders or stairs (2) Gloria Morris is able to occasionally lift at waist height or above an item weighing up to 5 lbs with her right hand and Gloria Morris is then able to carry this 5 lb object a distance of not more than 5 to 10 yards. Of note, Gloria Morris is unable to use her left arm-hand to assist with carrying any object as Ms. Morris, at times will need to use a straight cane in her left hand for all standing and walking. As such, Gloria Morris is unable to perform sedentary work and it is my medical opinion that Ms. Morris is permanently and totally disabled from performing sustained remunerative employment due to residual impairments related to her work injury of 8-5-96, (Claim no. 96-595355).
 {¶ 13} 5. Dr. Drown treated claimant for her allowed psychological conditions. In his June 27, 2007 report, Dr. Drown noted that claimant continues to benefit from psychological therapy. He did not offer an opinion as to her capacity for sustained remunerative employment.
 {¶ 14} 6. Drs. Michael Murphy and Donald L. Brown performed psychological evaluations of claimant. Dr. Murphy concluded that claimant was not permanently and totally disabled as a result of her depressive disorder and her impairment was mild. Dr. *Page 8 
Brown opined that claimant's depressive disorder had reached maximum medical improvement and she had a moderate level of impairment which he rated at 25 percent.
 {¶ 15} 7. Claimant was also examined by Drs. Walter Hauser and John W. Cunningham. Dr. Hauser opined that, based upon the allowed conditions in the claim, claimant was capable of performing remunerative employment in a sedentary job. Likewise, Dr. Cunningham concluded that claimant had a 12 percent whole person impairment and was capable of sedentary work activities.
 {¶ 16} 8. The following evidence is in the record regarding vocational rehabilitation: (1) An August 26, 1997 vocational rehabilitation closure report indicating that claimant was scheduled to have an MRI in September 1997, with surgery to follow. As such, the matter was closed due to medical instability. (2) A March 9, 1999 closure report from VocWorks Rehabilitation Services. In the closure summary, claimant indicated that she had already been granted a disability retirement from OSU and, when asked about her return-to-work goals, claimant stated: "I don't think I will ever be able to do any kind of work unless a miracle happens." Claimant did indicate that she would be willing to be a foster parent for an older child. At that time, claimant's doctor had obtained approval for right knee surgery. Claimant was informed that she could request to be re-referred for vocational rehabilitation in the future if she and her doctor felt that returning to work was a possibility. The letter closing claimant's rehabilitation file indicated that claimant was not feasible for participation in vocational rehabilitation since there was no vocational goal. (3) On June 27, 2000, claimant was referred again for vocational rehabilitation. Because Dr. Kistler indicated that claimant was not stable for participation in vocational rehabilitation at that time, claimant's file was closed. (4) An *Page 9 
August 28, 2001 assessment by physical therapist Tracy Hiltz concluded that claimant was capable of working an eight-hour workday in the light range. Ms. Hiltz also indicated that claimant would benefit from a work conditioning program to address safe body mechanics to improve her physical ability to perform light to medium work. (5) An October 11, 2006 employee ability assessment performed by Beal D. Lowe, Ph.D., indicating that claimant's IQ was borderline, and she reads at an eighth grade level. Dr. Lowe concluded that even if claimant could perform sedentary work, she lacked the capacity for any employment. He noted that she lacked intellectual and academic abilities to perform retail or clerical work, that her moderate psychological impairment would preclude her from adapting to or learning any sedentary retail or clerical occupation and that she lacked the capacity for vocational rehabilitation.
 {¶ 17} 9. Claimant's application was heard before a staff hearing officer ("SHO") on November 17, 2006. The SHO concluded that claimant was permanently and totally disabled based solely upon the allowed conditions in the claim. The SHO specifically relied upon the reports of Drs. Renneker, Kistler, and Drown.
 {¶ 18} 10. OSU filed a request for reconsideration arguing that the medical evidence did not support the SHO's conclusion in that the SHO failed to take into account claimant's lack of participation in vocational rehabilitation.
 {¶ 19} 11. By order mailed June 26, 2007, OSU's request for reconsideration was denied.
 {¶ 20} 12. Thereafter, OSU filed the instant mandamus action in this court. *Page 10 
Conclusions of Law: {¶ 21} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 22} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. *Page 11 
 {¶ 23} OSU raises the same issues here as it did in its motion for reconsideration. OSU contends that the reports of Drs. Kistler and Renneker do not constitute "some evidence" upon which the commission could rely because those doctors relied, in part, on nonallowed conditions in their determination that claimant was unable to perform sustained remunerative employment. OSU further challenges the report of Dr. Drown on grounds he failed to explain whether claimant's allowed psychological condition has any bearing on her ability to perform sustained remunerative employment of any kind and the report provides no explanation for his finding that claimant had a moderate impairment. OSU also contends that the commission abused its discretion by failing to consider claimant's failure to participate in vocational rehabilitation. For the reasons that follow, the magistrate finds that OSU has not demonstrated an abuse of discretion on the part of the commission.
 {¶ 24} It is undisputed that a claimant bears the burden of proving that his or her inability to perform sustained remunerative employment arises exclusively from the allowed conditions in the claim. See R.C.4123.58, and State ex rel. Wean United, Inc. v. Indus. Comm. (1993),66 Ohio St.3d 272, and State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452.
 {¶ 25} In challenging the report of Dr. Renneker, OSU points out that when noting claimant's present complaints, Dr. Renneker indicated that claimant had radiating pain. OSU argues that claimant's allowed condition of low back sprain could not have caused radiating pain. As such, OSU maintains that Dr. Renneker obviously considered a nonallowed back condition when she opined that claimant was permanently and totally disabled. *Page 12 
 {¶ 26} As noted in the findings of fact, Dr. Renneker correctly identified the allowed conditions in the claim and specifically stated that her ultimate conclusion was based upon permanent job restrictions related to her work injury of August 5, 1996. The fact that Dr. Renneker noted that claimant had radiating pain does not disqualify her report from consideration because her ultimate finding was based exclusively on the allowed conditions.
 {¶ 27} OSU makes the same argument concerning the report of Dr. Kistler. OSU points out that Dr. Kistler noted radicular symptoms which could not have been caused by claimant's allowed back condition. However, as with the report of Dr. Renneker, Dr. Kistler correctly identified the allowed conditions in the claim and specifically opined that claimant was permanently and totally impaired from sustained remunerative employment solely as a result of the injury suffered in her claim. As such, the magistrate finds the report of Dr. Kistler did constitute some evidence upon which the commission could rely.
 {¶ 28} Lastly, OSU challenges the "brief narrative report" of Dr. Drown. OSU argues that because Dr. Drown only evaluated other psychological evidence in the record and did not examine claimant himself, he should have explained why he found claimant to be moderately impaired when the other doctors opined that her impairment was mild.
 {¶ 29} Whether or not Dr. Drown should have provided a more detailed report is rather immaterial in light of the fact that both Drs. Renneker and Kistler opined that claimant was permanently and totally impaired due solely to the allowed physical conditions. As such, even if Dr. Drown's report was removed from evidentiary consideration, *Page 13 
the commission's order would still be supported by "some evidence" that claimant was permanently and totally disabled. Further, the commission is the exclusive evaluator of the credibility and weight to be given the evidence and OSU has not demonstrated the commission abused its discretion by relying upon Dr. Drown's opinion that claimant's psychological impairment was moderate.
 {¶ 30} Relator's next argument is that the commission abused its discretion by failing to take into account claimant's failure to participate in vocational rehabilitation. OSU points out that claimant was 45 years old at the time of her injury in 1996. Since 45 years old is a relatively young age, OSU contends that claimant's failure to participate in vocational rehabilitation should bar her from receiving PTD compensation.
 {¶ 31} It is undisputed that claimant bore the burden of proving entitlement to PTD compensation. Further, R.C. 4123.58(D)(4) provides that an award of PTD compensation shall not be made when the reason the employee is unable to engage in sustained remunerative employment is due to the fact that the "employee has not engaged in educational or rehabilitative efforts to enhance the employee's employability, unless such efforts are determined to be in vain."
 {¶ 32} In State ex rel. B.F. Goodrich Co. v. Indus. Comm. (1995),73 Ohio St.3d 525, 529, the Supreme Court of Ohio noted that the claimant did not participate in rehabilitation services offered by the commission. The court noted further that there is no indication that the claimant's lack of participation was based either on a physician's medical advice or a vocational evaluation that concluded that she was intellectually, psychologically, or emotionally incapable of retraining. The court concluded:
 The commission does not, nor should it, have the authority to force a claimant to participate in rehabilitation services. *Page 14 
However, we are disturbed by the prospect that claimant may have simply decided to forgo retraining opportunities that could enhance re-employment opportunities. An award of permanent total disability compensation should be reserved for the most severely disabled workers and should be allowed only when there is no possibility for re-employment.
 {¶ 33} The magistrate finds that several factors distinguish the present case from the situation presented in B.F. Goodrich or in another case cited by OSU, namely State ex rel. Arthur v. Indus. Comm., Franklin App. No. 05AP-1018, 2006-Ohio-6776. The claimant in the instant case was young at the time she was injured in 1996. Specifically, claimant was 45 years old. Her rehabilitation file was closed initially in August 1997 based upon a finding of medical instability. Specifically, claimant was scheduled for an MRI in September and had been informed that she would have surgery following the MRI. OSU appears to argue that because claimant's knee surgery was not approved until May 1998 and the surgery itself was not performed until July 1999, that the closure of her file in August 1997 is somehow invalid. The magistrate disagrees. There is nothing in the record to indicate that claimant misled the rehabilitation specialist when she informed them that her doctor was going to schedule her surgery following the September 1997 MRI. Further, there is no evidence that claimant purposefully delayed the surgery until July 1999 in an effort to avoid participation in rehabilitation. As such, OSU has not shown that the 1997 closure was inappropriate.
 {¶ 34} Further, claimant's rehabilitation file was again closed in March 1999 because claimant was still awaiting knee surgery. At that time, claimant informed the rehabilitation specialist that she had received disability retirement from OSU, and that she did not personally think she would be able to return to work but that she was willing to become a foster parent for an older child. At that time, her rehabilitation file was *Page 15 
closed because she was not a feasible candidate for participation. Again, given that the surgery did occur in July 1999, it appears that claimant indeed was not a candidate for rehabilitation at that time.
 {¶ 35} Claimant's rehabilitation file was closed again in June 2000 because her treating physician, Dr. Kistler, indicated that she was not medically stable for participation at that time. This was a valid reason for claimant not participating in rehabilitation.
 {¶ 36} The record does contain an August 28, 2001 letter from physical therapist Tracy Hiltz to Dr. Kistler providing him with the results of an assessment of claimant's current abilities. In that assessment, Ms. Hiltz found that claimant could participate in an eight-hour workday at the sedentary to light duty range of physical demand level, but that she would benefit from a work conditioning program to increase her employment opportunities. There is no evidence in the record addressing whether or not Dr. Kistler agreed with this assessment. OSU appears to argue that it was incumbent upon claimant to participate in vocational rehabilitation as of August 2001 because of this assessment and that her failure to do so should foreclose her from receiving PTD compensation.
 {¶ 37} In considering this argument, the magistrate also notes that the next piece of vocational evidence is from Dr. Lowe. In his October 11, 2006 report, he concluded that claimant lacked the intellectual and academic ability to perform retail or clerical work, that her moderate psychological impairment would preclude her from adapting to or learning any sedentary retail or clerical occupation, and concluding that she lacked the capacity for vocational rehabilitation. Second, claimant did not apply for PTD *Page 16 
compensation until April 2006 and the award of PTD compensation began November 18, 2005, based upon the report of Dr. Renneker. As such, at the time claimant actually applied for PTD compensation, the vocational evidence indicated that she lacked the capacity for vocational rehabilitation as well as the ability to perform at a sedentary level in retail or clerical occupations. Therefore, even if claimant would have participated in vocational rehabilitation and if she had been able to secure some employment in Fall 2001, as of November 2005, claimant would not have been physically able to continue performing that employment.
 {¶ 38} Lastly, the commission determined that claimant was permanently and totally disabled based solely upon the allowed conditions and without regard to her current ability to participate in rehabilitation. Even if the commission should have addressed whether claimant could have participated in rehabilitation years earlier, it becomes immaterial in light of her physical inability to perform sustained remunerative employment as of November 2005 when she applied for PTD compensation. If the medical evidence relied upon by the commission had indicated that claimant still maintained the ability to perform work at some level and had granted her application without considering the vocational evidence, then OSU's argument that the commission should have addressed claimant's lack of participation in vocational rehabilitation would have some merit. However, the commission found that she was physically incapable of performing some sustained remunerative employment rendering the vocational evidence immaterial.
 {¶ 39} Based on the foregoing, it is this magistrate's conclusion that OSU has not demonstrated that the commission abused its discretion in granting claimant's *Page 17 
application for PTD compensation and this court should deny OSU's request for a writ of mandamus.
 STEPHANIE BISCA BROOKS, MAGISTRATE *Page 1