[Cite as *State ex rel. Lacroix v. Indus. Comm.*, 2013-Ohio-4881.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Sherwood Lacroix, | : | |
| Relator, | : | |
| | : | No. 12AP-931 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Industrial Commission of Ohio and GMRI, Inc., | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on November 5, 2013

*Nager, Romaine & Schneiberg Co. L.P.A., Jerald A. Schneiberg, Jennifer L. Lawther* and *Michael A. Liner,* for relator.

*Michael DeWine*, Attorney General, and *Justine S. Casselle,* for respondent Industrial Commission of Ohio.

*Reminger Co., LPA, Melvin J. Davis, Ronald Fresco* and *Charles Alusheff,* for respondent GMRI, Inc.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

O'GRADY, J.

{¶ 1} In this original action, relator, Sherwood Lacroix, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for permanent total disability ("PTD") compensation and to enter an order granting said compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate concluded the commission abused its discretion in denying PTD compensation because: (1) Dr. Johnston's vocational report improperly omitted the "seated position" limitation in Lacroix's ability to perform sedentary work; and (2) Dr. Johnston erred in stating that Lacroix can work with his arms in front of him while standing because he is dependent on support from his walker in the standing position. Accordingly, the magistrate recommended that the court issue a writ of mandamus.

{¶ 3} Both the commission and GMRI have filed objections to the magistrate's decision. The commission offers the following objections to the magistrate's conclusions of law:

> (1.) The Magistrate erred in concluding that the commission's reliance on Dr. Johnston's report was an abuse of discretion, as the commission only agreed with his assessment of Lacroix's academic and vocational abilities and potentials and did not rely on his assessment of possible jobs Lacroix can perform.
>
> (2.) The Magistrate fails to analyze whether the record contains "some evidence" to support the commission's denial of Lacroix's PTD application.

{¶ 4} GMRI raises similar issues in the following two objections:

> Objection No. 1: The Magistrate Erred In Concluding That The Commission's Order Denying PTD Compensation Was An Abuse Of Discretion.
>
> Objection No. 2: The Magistrate Erred Because Requesting The Commission To Issue A New Order Is Futile And Denial Of PTD Compensation Is Inevitable.

For ease of discussion, we will discuss the commission's second objection and GMRI's two objections together. None of the parties have filed objections to the magistrate's findings of fact and, following an independent review of the record, we adopt those findings as our own.

{¶ 5}   To be entitled to a writ of mandamus, Lacroix must demonstrate a clear legal right to the requested relief, a corresponding clear legal duty on the part of the commission to provide the requested relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Ervin v. Barker*, 136 Ohio St.3d 160, 2013-Ohio-3171, ¶ 9. To establish the requisite clear legal right and clear legal duty, a relator challenging a commission decision must establish that the commission abused its discretion by entering an order that is not supported by some evidence in the record. *State ex rel. Roberts v. Indus. Comm.*, 10th Dist. No. 12AP-298, 2013-Ohio-287, ¶ 4; *State ex rel. Baker v. Coast to Coast Manpower, L.L.C.*, 129 Ohio St.3d 138, 2011-Ohio-2721, ¶ 9 ("mandamus is the proper method to examine whether the commission has abused its discretion"). "If the record contains some evidence to support the commission's findings, there has been no abuse of discretion and a court has no basis to award a writ of mandamus." *Id.*; *see also State ex rel. AutoZone, Inc. v. Indus. Comm.*, 117 Ohio St.3d 186, 2008-Ohio-541, ¶ 14. "The burden on relator is a heavy one." *State ex rel. Stevens v. Indus. Comm.*, 10th Dist. No. 10AP-1147, 2012-Ohio-4408, ¶ 7.

{¶ 6}   In their objections, respondents claim that Lacroix's request for a writ of mandamus should be denied because there is some evidence in the administrative record to support the commission's decision to deny his application for PTD compensation.

{¶ 7}   PTD is "the inability to perform sustained remunerative employment due to the allowed conditions in the claim." Ohio Adm.Code 4121-3-34(B)(1); *State ex rel. Guthrie v. Indus. Comm.*, 133 Ohio St.3d 244, 2012-Ohio-4637, ¶ 8. In determining a claimant's ability to perform sustained remunerative employment, the commission must first consider the medical evidence and determine the claimant's residual functional capacity. *Roberts* at ¶ 5, citing Ohio Adm.Code 4121-3-34(B)(4). If the commission finds that the claimant is able to engage in sustained remunerative employment, it must then consider non-medical disability factors and vocational evidence, i.e., age, education, work record, and all other relevant factors, including physical, psychological, and sociological factors. *Id.*, citing Ohio Adm.Code 4121-3-34(D)(2)(b) and (c), 4121-3-34(B)(3); *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987).

{¶ 8}   The commission relied on Dr. Shtull's medical report to establish that Lacroix is capable of "most sedentary positions of employment" and "engaging in

vocational rehabilitation and skill enhancement efforts."  (Magistrate's Decision, at ¶ 26.) For Lacroix's residual functional capacity, Dr. Shtull determined that he is "capable of full-time sustained remunerative employment in the sedentary category, in the seated position, with the following additional restrictions:  1) The ability to change positions as necessary; 2) No foot pedal operation with the lower extremities; 3) No exposure to vibratory forces." (Magistrate's Decision, at ¶ 24.)  As the magistrate acknowledged in his decision, Lacroix does not challenge the commission's reliance on Dr. Shtull's report.

{¶ 9}    Instead, Lacroix claims that the commission abused its discretion by relying on Dr. Johnston's vocational report.  Lacroix points out that Dr. Johnston's report relied on Dr. Shtull's medical report, but improperly omitted the reference to the "in the seated position" restriction noted by Dr. Shtull.  Dr. Johnston's omission of this restriction in Lacroix's residual functional capacity led to further error in suggesting he could perform unskilled positions that may require working with his arms while standing, which was precluded by Dr. Shtull's medical report.

{¶ 10} Nevertheless, for the reasons that follow, any deficiencies in Dr. Johnston's vocational report do not vitiate the salient fact that there remains some evidence in the record to support the commission's denial of Lacroix's application for PTD compensation.

{¶ 11} First, there is no requirement that a vocational expert exhaustively list all the medical restrictions when referring to a medical report.  *State ex rel. Arthur v. Indus. Comm.*, 10th Dist. No. 05AP-1018, 2006-Ohio-6776, ¶ 45.  And the commission's reliance on a vocational report that, in part, fails to list all medical restrictions or includes jobs that require physical activities in contravention of medical restrictions, does not necessarily constitute an abuse of discretion.  *Id.* at ¶ 13, 15.

{¶ 12} Second, the commission is considered to be the expert on PTD matters. *Guthrie* at ¶ 8.  It is the exclusive evaluator of disability and is not bound to accept vocational evidence, even if it is uncontroverted.  *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266, 270 (1997); *State ex rel. Rogers v. Salmon & Sons, Inc.*, 10th Dist. No. 12AP-113, 2013-Ohio-284, ¶ 10.  The commission may credit submitted vocational evidence, but because it is the expert, this evidence is neither critical nor necessary. *Jackson* at 271; *State ex rel. Scarberry v. Comfort Specialist*, 10th Dist. No. 12AP-707, 2013-Ohio-3164, ¶ 6.  Here, as in *Scarberry*, the commission identified the non-medical

factors it considered—Lacroix's age, education, and work history—and, in addition, it expressly cited one of Lacroix's previous jobs (managing a video game store for three years), which was not mentioned in the submitted vocational reports. Thus, the commission undertook its own independent evaluation of the pertinent vocational factors without completely relying on Dr. Johnston's vocational report.

{¶ 13} Third, the commission is free to accept all, some, or none of the findings of any vocational report. *State ex rel. Culbert v. Indus. Comm.*, 10th Dist. No. 11AP-172, 2012-Ohio-1217, ¶ 3. Although the commission found that Dr. Johnston's vocational report offered "the most accurate assessment" of Lacroix's "academic and vocational abilities and potentials," it ultimately merely concurred in Dr. Johnston's conclusion that Lacroix "is capable of a return to the workforce." (Magistrate's Decision, at ¶ 26.) There is no evidence that the commission credited the portion of Dr. Johnston's report citing potential jobs in which working with his arms might be required while standing. Notably, certain jobs cited in Dr. Johnston's vocational report, e.g., surveillance system monitors and seated cashiers, do not appear to require individuals to work with their arms directly in front of them while standing. Nor was Dr. Johnston's discussion of the non-medical factors based on a flawed interpretation of Dr. Shtull's medical report.

{¶ 14} Finally, even if the commission had rejected Dr. Johnston's vocational report completely, it could have relied on Dr. Shtull's medical report directly and still determined that Lacroix is capable of sedentary work with the specified restrictions. In *State ex rel. Baker v. Formica Corp.*, 10th Dist. No. 05AP-137, 2005-Ohio-6373, we sustained similar objections to a magistrate's decision that recommended denying a writ of mandamus to vacate an order denying PTD compensation based on the commission's reliance on a flawed vocational report that did not account for all of the claimant's physical restrictions. We held that the commission is the exclusive evaluator of non-medical factors and that because it could have rejected the contested vocational report completely and still relied on the medical report directly, the commission's decision denying PTD compensation was supported by some evidence and not subject to reversal by a writ of mandamus. *Id.* at ¶ 7.

{¶ 15} Therefore, we find that any error in a portion of Dr. Johnston's vocational report does not justify the requested extraordinary relief in mandamus. Dr. Shtull's

medical report and the remainder of Dr. Johnston's vocational report constitute some evidence supporting the commission's denial of Lacroix's PTD application. Accordingly, the commission's second objection and GMRI's two objections are sustained.

{¶ 16} The commission also argues that the magistrate erred in concluding that its reliance on Dr. Johnston's report was an abuse of discretion. By so holding, we need not address the commission's first objection and render it moot. *Baker* at ¶ 8.

{¶ 17} For these reasons, and based on our independent review of the record, we find that the magistrate has properly determined the pertinent facts and adopt them as our own. In accordance with our decision, however, we sustain the commission's second objection and GMRI's two objections to the magistrate's conclusions of law, render the commission's first assignment of error moot and reject the magistrate's recommendation to issue a writ of mandamus. Accordingly, the requested writ of mandamus is denied.

*Objections sustained;*
*writ of mandamus denied.*

DORRIAN and T. BRYANT, JJ., concur.

T. BRYANT, J., retired, formerly of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____

# APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Sherwood Lacroix, | : | |
| Relator, | : | |
| | | No. 12AP-931 |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Industrial Commission of Ohio and GMRI, Inc., | : | |
| | : | |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

### Rendered on June 11, 2013

*Nager, Romaine & Schneiberg Co. L.P.A., Jerald A. Schneiberg, Jennifer L. Lawther* and *Michael A. Liner,* for relator.

*Michael DeWine*, Attorney General, and *Justine S. Casselle,* for respondent Industrial Commission of Ohio.

*Reminger Co., LPA, Melvin J. Davis, Ronald Fresco* and *Charles Alusheff,* for respondent GMRI, Inc.

### IN MANDAMUS

{¶ 18} In this original action, relator, Sherwood Lacroix, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his application for permanent total disability ("PTD") compensation and to enter an order granting the compensation.

Findings of Fact:

{¶ 19} 1. On September 7, 2003, relator sustained an industrial injury while employed as a kitchen helper at a restaurant operated by respondent GMRI, Inc. ("employer"), a self-insured employer under Ohio's workers' compensation laws. On that date, relator slipped and fell on a wet floor.

{¶ 20} 2. The industrial claim (No. 03-856581) is allowed for:

> Cervical / lumbar strain, head contusion; disc displacements at L4-5 and L5-S1; post lumbar laminectomy syndrome; foraminal stenosis at L5-S1.

{¶ 21} 3. On May 4, 2010, attending physician Timothy Morley, D.O., wrote:

> [B]y the end of last year secondary to the ongoing severe pain an intrathecal pump was considered however, the patient states that he does not [want] to pursue that. An [functional capacity evaluation] and mobility assessment was obtained and he has essentially been confined to a wheelchair. In fact, he was recently approved for an electric wheelchair.
>
> I have in the past stated that the patient is permanently and totally disabled. Since that time he has had additional diagnostics, and additional invasive procedures which have essentially failed. He, as mentioned, was deemed not feasible for vocational rehabilitation. He is confined to a wheelchair. Essentially he has no other treatment options.
>
> Given the history, as well as serial [sic] physical examinations as outlined by my notes, I would again state to a reasonable degree of medical certainty that as a direct result of the injury of 09-07-2003 the patient is unable to perform any remunerative work. As such the patient is considered permanently and totally disabled.

{¶ 22} 4. On May 14, 2010, relator filed an application for PTD compensation. In support, relator submitted the May 4, 2010 report of Dr. Morley.

{¶ 23} 5. On July 28, 2010, at the commission's request, relator was examined by Daniel J. Leizman, M.D. In his five-page narrative report dated July 29, 2010, Dr. Leizman concluded:

> The Physical Strength Rating form was not completed as the Claimant was not deemed having reached Maximum Medical

Improvement with regard to the lumbar spine allowed conditions in this Claim.

In summary, my impression is that Sherwood Lacroix has reached Maximum Medical Improvement with regard to Claim allowances of head contusion and cervical strain. There is no percentage of whole person impairment with regard to head contusion or cervical strain Claim allowances. My opinion is that determination of Maximum Medical Improvement needs to be deferred at this time with regard to the lumbar spine Claim allowances, on a high field MRI scanner pending repeat MRI of the lumbar spine without and with gadolinium enhancement, and review of results and reassessment of the Claimant.

{¶ 24} 6. On June 17, 2010, at the employer's request, relator was examined by Kiva Shtull, M.D. In his five-page narrative report, Dr. Shtull states:

## PHYSICAL EXAMINATION

The claimant is alert and in no acute distress, coherent, relevant, cooperative, comfortable, and most pleasant. He states that he is 5 feet 11 inches tall and weighs approximately 300 pounds.

Examination of the head shows that it is normocephalic and atraumatic with cranial nerves II through XII being intact. Affect, mood, orientation, and speech were normal.

Examination of the cervical spine shows no pain on palpation of spinous processes, paraspinal musculature, or trapezial ridges. Reflexes in the upper extremities are symmetrical. Strength testing of neurological level C5-T1 is intact bilaterally. Active range of motion of the cervical spine showed flexion 30 degrees, extension 25 degrees, right lateral flexion 40 degrees, left lateral flexion 40 degrees, right rotation 60 degrees, left rotation 55 degrees.

Examination of the lumbar spine was limited by the fact that in the standing position, he was entirely dependent on support from his walker. Left lower extremity tremor on a constant basis was noted. Palpatory examination was limited by adiposity. Sensation was globally decreased on the left in the distributions of L4, L5, and S1. The left Achilles reflex was absent. The claimant was able to ambulate fairly well with the use of his walker, although again it is noted the fact that he drags his left lower extremity behind him.

**CONCLUSION**

* * *

Based upon the history, physical examination, and review of the medical file, it is my opinion to within a reasonable degree of medical probability, that the claimant is capable of full-time sustained remunerative employment in the sedentary category, in the seated position, with the following additional restrictions: 1) The ability to change positions as necessary; 2) No foot pedal operation with the lower extremities; 3) No exposure to vibratory forces.

The claimant's ability to sustain full-time remunerative employment is facilitated by his recent acquisition of a power wheelchair, which request I was in agreement with at the time of my independent medical evaluation of 01/07/2010.

{¶ 25} 7. At the employer's request, vocational expert Craig Johnston, Ph.D., prepared a report captioned "Employability Assessment." In his six-page narrative report (page six is captioned addendum) dated November 11, 2010, Dr. Johnston states:

**OPINION**

I have reviewed the available medical records, work history, and socio-economic factors. My opinions are based on the job descriptions and worker traits as described by the Dictionary of Occupational Titles which contains information compiled by the U.S. Department of Labor in its job analysis studies.

**1. From a vocational standpoint, considering the allowed conditions in his claims, does the claimant retain the capacity to engage in sustained remunerative employment? Does the claimant have the vocational capacity necessary to be retrained for some other type of sustained remunerative employment?**

Sherwood Lacroix is 34 years of age with a 9th grade education and a semiskilled work history. He sustained a work-related injury in September 2003 and has not worked since. He has now filed for permanent total disability with the medical support of Timothy Morley, D.O. This is his third such application, with previous denials in 2007 and 2008.

* * *

The claimant's lack of possession of a high school diploma is a potential barrier to some forms of employment, but it has not precluded him from having previously engaged in a series of unskilled and semiskilled work activities, and it would not be expected to prevent him from engaging in all work activity in the future. Mr. Lacroix states that he can read, write, and do basic math, but not well. It is noted however that he does appear to have completed the PTD application on his own, reflecting the ability to follow written instructions, complete short forms, and write legible and grammatically correct sentences. These, along with the ability to perform simple math, are the basic skills required for entry-level work activity. His education is therefore considered sufficient for entry-level, non-academically strenuous work activity. Further, in each of his previous denials the OIC referenced information from the Mentor Public Schools which found Mr. Lacroix, then a high school student, to no longer require special education services. The OIC concluded that many of his academic problems "resulted from a total lack of effort on his part". Indeed, there is no evidence that the claimant has ever sought to obtain his GED or engage in academic remediation since leaving high school and therefore, obviously, since either of his two previous denials.

The claimant's work history consists of unskilled and semiskilled work activities providing few appreciable transferable skills. A lack of transferable skills is not uncommon among younger individuals, and Mr. Lacroix was just 27 when he last held employment. His work does however reflect the ability to obtain and perform entry-level work, including those occupations that require a 7-8th grade reasoning proficiency and 4-6th grade mathematics and language proficiencies, as well as average aptitudes of intelligence, verbal skill, clerical perception, motor coordination, and manual dexterity. He has demonstrated specific skills including the ability to work both independently and in a team setting, follow instructions (ingredients), categorize materials (stock clerk), and operate machinery. He has experience in the food service, retail trade, and manufacturing industries, and could return to these or other settings in which entry-level work is abundant.

The claimant's age, education, and work history are sufficient for entry-level employment, assuming the physical

capacities to do so. To this end, three medical opinions are noted.

According to Dr. Morley, the claimant is permanently and totally disabled. Based on this opinion Mr. Lacroix would be unemployable, regardless of the relevant vocational factors.

According to Kiva Shtull, M.D., the claimant is capable of sedentary work activity with the need to change positions as necessary, avoid exposure to vibratory forces, and avoid foot pedal operation. This opinion is similar to the one Dr. Shtull provided in February 2008. With no changes to the claimant's vocational profile (other than aging a few years) the vocational conclusions based on this medical opinion would be essentially the same as well. While Mr. Lacroix would be incapable of returning to his former work activity, all of which were performed at greater than a sedentary level, he could engage in other entry-level work activities. Returning to a manufacturing industry, the claimant could work in seated assembly and parts inspection/finishing positions. Unskilled positions involve 1-2 step processes to assist in manufacturing various products. The individual can alternate between sitting and standing as these seated positions typically involve a raised stool. Therefore, moving to the standing position does not prevent individuals from working with their arms directly out in front of them (as opposed to having to reach down or bend over to work at a low level table). Other work activities that are unskilled entry-level include surveillance system monitor (watches closed circuit televisions to monitor vandalism or theft), and seated and sit/stand cashiers (as found in parking garages, toll booths, movie theaters, bus stations, entertainment box offices, and cafeterias). Only a 4-6th grade mathematics level is needed to perform the duties of a cashier, which is the same level of mathematics proficiency the claimant demonstrated through his past employment. Again, these individuals can alternate from a seated to standing position.

A final opinion comes from Daniel Leizman, M.D., who actually does not render an assessment of physical capacities at all, instead opining that the claimant has not reached maximum medical improvement. No vocational conclusion can be drawn from the report of Dr. Leizman.

* * *

Mr. Lacroix has now been found not disabled on two previous occasions, both under the assumption he remained capable of sedentary physical activity. Today, if one accepts the opinion of Dr. Shtull, then Mr. Lacroix is again capable of sedentary physical activity. As there has been no change to his profile with the exception that he has aged from 31 to 34 years, the same vocational conclusions are drawn. He cannot return to past work, he has the capacity for entry-level work, and entry-level employment options are available to him. His lack of a high school diploma is a potential barrier to some forms of employment, but not to entry-level work. This is supported by his history of obtaining and performing multiple positions of employment. He also possesses the ability to pursue his GED, and has so since leaving high school. This would enhance his employability. Instead, there is no evidence that he has attempted this nor is there evidence that he has made efforts to return to work. If motivated, the claimant's vocational profile is one that supports the capacity for entry-level work at the sedentary level. Therefore, Mr. Lacroix remains capable of sustained remunerative employment.

{¶ 26} 8. Following a December 2, 2010 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order explains:

The Staff Hearing Officer relies upon the 6/17/2010 report of Dr. Shtull in finding that the injured worker is capable of most sedentary positions of employment and also, implicit in such a determination (Dr. Shtull) capable of engaging in vocational rehabilitation and skill enhancement efforts. The Staff Hearing Officer further finds, as indicated below, that the injured worker is vocationally capable of a return to the workforce or a vocational rehabilitation program despite his limited ninth grade education. For these reasons, as well as those set forth below, the IC-2 of 5/14/2010 is denied.

The Injured Worker has twice previously filed for Permanent and Total Disability Compensation (9/14/2006 and 1/27/2008). A review of the IC-2 applications of those dates reveals information essentially the same as that set forth on the current IC-2 filed 5/14/2010.

The Staff Hearing Officer notes that the prior denials of the Injured Worker's IC-2 applications of 9/14/2006 and 1/27/2008 are not controlling or dispositive as to his current application (5/14/2010). Irrespective of any change in vocational efforts or circumstances since the most recent IC-

2 application, inquiry and evaluation must first be made to determine if the impairments arising from the allowed physical conditions themselves prevent a return to any form of sustained, remunerative employment. If such is found to be the case, then vocational evidence and efforts, or the lack therefore, become irrelevant. Per the 6/17/10 report of Dr. Shtull, the SHO finds that the impairments arising from the allowed conditions herein are not, in and of themselves, of a nature and extent so as to prevent a return to employment.

* * *

The Injured Worker stated that he had recently been approved for and had purchased a powered scooter/wheelchair and lift and that the claim had been additionally recognized for the condition "foraminal stenosis at L5-S1". The Injured Worker's acquisition of a power wheelchair has been cited, by the Injured Worker, as evidence of an ever-worsening impairment and lack of mobility and, by the employer, as evidence of an increased and expanded ability to remain mobile and to engage more fully in activities of daily living and, conceivably, work activity.

* * *

All vocational evidence on file and at hearing was reviewed and considered, including the 10/3/2010 report of Mark Anderson and the 11/11/2010 report of Craig Johnston. Mr. Lacroix is currently 34 years of age, a vocational asset. He has a ninth grade education, suggestive of a limited education. While the Injured Worker testified, and documentation on file confirmed, that his formal education was characterized by learning disabled classes, such an academic background did not, in any event, prevent him from obtaining and maintaining a series of entry level positions of unskilled and semi-skilled employment (kitchen helper; stock clerk; machine operator; video store manager) ranging from light to heavy levels of exertion. Absent from the analysis and history set forth in the vocational reports on file is the fact that the injured worker managed a video game store for three years (10/1/2004 report of Dr. Swales). While remote in time, such a position of employment and responsibility runs counter to the assertions of Mark Anderson that the Injured Worker is functioning, in many respects, at the level of a second or third grader and has no potential for vocational rehabilitation or skill enhancement.

As such, the true significance and limitations of the Injured Worker's educational background is questionable when a return to unskilled and some semi-skilled employment is contemplated. While the injured worker's past employment may have left him with no presently transferable skills, such a finding is not fatal to a return to unskilled and entry level employment.

The Staff Hearing Officer finds that the vocational assessment of Philip Johnson [sic] (11/11/2010) offers the most accurate assessment of the Injured Worker's academic and vocational abilities and potentials and concurs with his opinion that the injured worker is capable of a return to the workforce. The Staff Hearing Officer finds it more probable than not that, as found by Mr. [Johnston], the Injured Worker has functioned at and retains the potential for a higher level of vocational achievement than that asserted by Mark Anderson (10/3/2010). For example, while much is made of the Injured Worker's limited education and his enrollment in learning disabled classes during his academic career, a report completed by a psychologist of the Injured Worker's choosing (Dr. Weinstein - 8/16/2004) described him as "low average to average intelligence" with "no symptoms of cognitive dysfunction" and did not find him unemployable. It must be remembered that the claim is not allowed for any psychological condition.

{¶ 27} 9. On February 9, 2011, the three-member commission mailed an order denying relator's request for reconsideration of the SHO's order of December 2, 2010.

{¶ 28} 10. On October 29, 2010, relator, Sherwood Lacroix, filed this mandamus action.

Conclusions of Law:

{¶ 29} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 30} For its determination of residual functional capacity, Ohio Adm.Code 4121-3-34(B)(4), the commission, through its SHO, relied exclusively upon the June 17, 2010 report of Dr. Shtull who opined:

[T]he claimant is capable of full-time sustained remunerative employment in the sedentary category, in the seated position, with the following additional restrictions: 1) The ability to change positions as necessary; 2) No foot pedal

operation with the lower extremities; 3) No exposure to vibratory forces.

{¶ 31} Here, relator does not challenge the commission's exclusive reliance upon the report of Dr. Shtull for its determination of residual functional capacity. However, relator does challenge the commission's reliance upon the vocational report of Dr. Johnston.

{¶ 32} The commission's reliance upon the report of Dr. Johnston is expressed most strongly when the SHO states:

> The Staff Hearing Officer finds that the vocational assessment of Philip Johnson [sic] (11/11/2010) offers the most accurate assessment of the Injured Worker's academic and vocational abilities and potentials and concurs with his opinion that the injured worker is capable of a return to the workforce.

{¶ 33} Parenthetically, it can be noted that, at oral argument before the magistrate, counsel agreed that the SHO's order incorrectly refers to "Philip Johnson" when it should have referred to "Craig Johnston" as the author of the relied upon November 11, 2010 report.

{¶ 34} The commission's reliance upon the report of Dr. Johnston is problematical because Dr. Johnston strongly suggests that he misunderstood the residual functional capacity described in Dr. Shtull's report. The problem is found in the paragraph of Dr. Johnston's report beginning with the following sentence:

> According to Kiva Shtull, M.D., the claimant is capable of sedentary work activity with the need to change positions as necessary, avoid exposure to vibratory forces, and avoid foot pedal operation.

{¶ 35} As relator points out, a critical component of Dr. Shtull's description of residual functional capacity is missing. That is, Dr. Johnston fails to include the language "in the seated position" which is a limitation upon the ability to perform sedentary work.

{¶ 36} Failing to include the language "in the seated position" is significant because of what Dr. Shtull states in his findings under the heading "Physical Examination." There, Dr. Shtull states:

> Examination of the lumbar spine was limited by the fact that in the standing position, he was entirely dependent on

support from his walker. Left lower extremity tremor on a constant basis was noted. * * * The claimant was able to ambulate fairly well with the use of his walker, although again it is noted the fact that he drags his left lower extremity behind him.

{¶ 37} Thus, relator cannot work with his hands in the standing position because he is entirely dependent on support from his walker in the standing position. Use of the walker would obviously occupy his hands.

{¶ 38} Notwithstanding that relator is entirely dependent on support from his walker in the standing position, Dr. Johnston, nevertheless, states:

Returning to a manufacturing industry, the claimant could work in seated assembly and parts inspection/finishing positions. Unskilled positions involve 1-2 step processes to assist in manufacturing various products. The individual can alternate between sitting and standing as these seated positions typically involve a raised stool. Therefore, moving to the standing position does not prevent individuals from working with their arms directly out in front of them (as opposed to having to reach down or bend over to work at a low level table).

{¶ 39} Given Dr. Shtull's description of residual functional capacity, Dr. Johnston cannot be correct in stating that the individual (relator) can work with his hands while alternating between sitting and standing. Clearly, relator cannot work with his hands while standing with the assistance of his walker.

{¶ 40} Given the above analysis, the magistrate finds that the commission's reliance upon the report of Dr. Johnston was an abuse of discretion requiring the issuance of a writ of mandamus.

{¶ 41} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of December 2, 2010, and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the PTD application.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).